## Hall's Administratrix v. West Kentucky Coal Company.

(Decided October 30, 1928.)

### Appeal from Webster Circuit Court.

1. Master and Servant.—It was the duty of coal company to furnish employee, having general supervision over operation of motor and pumps, as well as specified duties to perform in connection therewith, without restriction on freedom of his movements, with a safe place for reasonable supervision, which would include freedom from danger of slate falling on motor.

2. Master and Servant.—It is immaterial whether employee, killed by falling slate while on duty in mine by reason of employer's failure to discharge duty to furnish him a safe place for reasonable supervision over operation of motor and pumps, was actually engaged in testing or oiling motor or in warming himself when slate fell on it.

C. J. WADDILL and J. C. CANNADAY for appellant.

RAYBURN & WITHERS and GORDON, GORDON & MOORE for appellee.

OPINION OF THE COURT BY JUDGE McCANDLESS—Reversing.

Robert S. Hall, a pumper for the Western Kentucky Coal Company, while on duty at the latter's mine, was

killed by a fall of slate. The company had never accepted the provisions of the Workmen's Compensation Act (Ky. Stats., secs. 4880-4987), and decedent's administratrix sued at law to recover for the death of her intestate, alleging that this was caused by the negligence of the defendant in failing to provide him a safe place in which to work. On the trial, a directed verdict was returned in favor of defendant, and plaintiff appeals.

It is shown in the evidence that appellee's mine was flooded; it had three pumps running, two of which carried water into a sump, from which the third pump discharged it. This sump was in the north end of a rectangular room, approximately 30x90 feet in size. The pump was some distance south of the sump, and near the western wall. A shaft 4 or 5 inches from the floor connected the pump with the motor, which was several feet further south, and so located as to leave an open space of from 12 to 14 inches between it and the western wall. It was encased in a metal frame about 3 feet long, 18 inches wide, and 3½ feet high. The top of this case was oval—almost round. Oil caps about 8 inches high were provided at each end, and power wires ran from the south end of the motor to the switch box, some distance beyond. It was Hall's duty to attend to all the pumping, but, when not otherwise actively engaged, he had a portable box for a seat, and was stationed in this room. His duties consisted in starting and stopping the motor, oiling the pump and motor, seeing the pumps continued operation, and in priming them when necessary; it not being any part of his duty to inspect the room.

He had been on duty but a few days, and worked on the night shift from 8 in the evening until 6 in the morning. He was last seen before the injury about 11 o'clock on the evening of April 11, 1926, when he assisted his immediate superior in raising a pump in another room, after which he returned to the sump room. The next morning, about 6 o'clock, he was found fatally injured. His wrist was broken, one of his eyes pressed out, and his skull fractured; the exact spot in which he was found not being shown, as the parties who found him have not testified. Other witnesses testify that a piece of slate some 3 feet in length, from 16 to 18 inches in width, and several inches in thickness, had fallen from the roof above the motor, and was wedged down in the space between the motor and the western wall. There were

marks upon the top of the motor case which indicated that the slate had fallen upon it and slipped to the position in which it was found. Hall's cap and miner's lamp were found about 10 inches from the north end of the motor. The lamp was mashed, but retained traces of enamel which corresponded with a scratched place on the top of the motor case. The portable seat was found some 4 or 5 feet south of the motor. There is testimony that there was no cause for Hall to go between the motor and the wall, and that there were no duties that he could perform in so doing, and speculative evidence was introduced pro and con as to whether or not Hall was engaged in oiling the motor at the time of the fatal injury; all of this being a matter of inference. There is also evidence that prior thereto Hall had placed the box seat near the motor and leaned back against it to warm, and that he had been warned not to do this, as the motor might ground and electrocute him; and it is argued that at the time of the injury he must have been warming himself by leaning over the motor with his right arm extended, and have thus received the impact from the falling slate. It is further shown that the superior officers had observed the slate previously, and there is some evidence that it had been chalked, indicating a necessity for propping it, but it is not shown that Hall knew of this.

Appellee insists that, in order to recover, appellant must show that Hall was engaged in some specific duty at the time of his injury; that he had no duty to perform in the rear of the motor, and, in fact, was not there at the time of the injury; that it is as reasonable to infer that he was merely warming himself as it is to infer that he was attending to the motor at the time of the impact; and that the jury should not be permitted to speculate upon which of the two he was doing. The lower court adopted this view; hence the peremptory. We think this too narrow a construction of appellee's duty to its workmen. While the intestate had certain specified duties to perform in connection with the motor and pumps, he also had general supervision over their operation, and no restriction was placed on the freedom of his movements. It was appellee's duty to furnish him a safe place for reasonable supervision, and this would certainly include freedom from danger of slate falling upon the motor. If appellee failed to discharge this duty, and by reason thereof Hall was killed by such falling slate

while on duty, it is immaterial whether he was at that time actually engaged in testing or oiling the motor or in warming himself. If he had been electrocuted while upon the motor, a different question might arise, but the principle of law applying to such supposed case has no bearing on the duty of appellee to furnish him a safe place in which to work. Nor is this case analogous to those cases in which an employee leaves his line of duty and wanders into an unsafe place, and there receives an injury.

Wherefore the judgment is reversed, and cause remanded for proceedings consistent with this opinion.